IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

BENNY RAY WASHINGTON

     Movant,

v.                                   Case No. 2:04-cv-00975
                                     Case No. 2:02-cr-00037

UNITED STATES OF AMERICA,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant Benny Ray Washington's (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (## 147 and 156).[1] This matter has been referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 5, 2002, Defendant was indicted by a Federal grand jury on one count of possession with intent to distribute a

---

[1] On September 8, 2004, Defendant filed an unsigned copy of his section 2255 motion. (# 147). On September 10, the undersigned entered an Order directing Defendant to file a signed copy of his motion. (# 155). Defendant filed the executed copy of the motion, without any other changes, on November 4, 2004. (# 156). Defendant also attached another copy of his Application to Proceed in forma pauperis ("Application") to document # 156. The undersigned denied Defendant's Application, without prejudice, on September 10, 2004, explaining that there is no filing fee for a section 2255 motion. (# 150).

quantity of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).
(# 10).  On April 10, 2002, a Superseding Indictment was handed
down, charging Defendant with one count of possession with intent
to distribute five grams or more of methamphetamine, in violation
of 21 U.S.C. § 841(a)(1).  (# 71).  Defendant ultimately proceeded
to trial on the Superseding Indictment on April 23, 2002.

At trial, Detective Joe Savilla of the Metropolitan Drug
Enforcement Network Team ("MDENT") testified that, on January 15,
2002, he had participated in a traffic stop of a Ford Bronco driven
by Defendant.  Defendant was arrested for operating the vehicle on
a suspended driver's license.  (# 108 at 40-44).  Following
Defendant's arrest, Detective Savilla advised Defendant of his
Miranda rights, and Defendant responded that he wished to
cooperate.  (Id. at 46-47).

As he was sitting in Detective Savilla's vehicle, Defendant
told Detective Savilla that he had obtained a quantity of
methamphetamine earlier that afternoon at his motel room, that he
had obtained one half-ounce to one ounce quantities of
methamphetamine from the same source during the preceding four or
five weeks, either at the same motel or elsewhere, and that he had
paid $2,000 for the methamphetamine, but could make a $1,000 profit
by selling it in smaller quantities to family and friends.  (Id. at
48).

Following his oral statement, Defendant was transported to the MDENT office, where he was again advised of his Miranda rights. (Id. at 49-49, 100).  At that time, he acknowledged in writing that he had been advised of those rights and that he understood them. (Id. at 49, 100-103).  Defendant then gave a written statement, reiterating the details provided in his earlier oral statement. (Id. at 51-52, 103).   The written statement was admitted and published to the jury during the trial.  (Gov. Ex. # 3).

Detective Arthur Napier, who is also with MDENT, testified that he searched Defendant's person following his arrest and seized a set of digital scales from a black pouch on Defendant's waistband.  (# 108 at 92-94).   Detective Napier also observed another officer remove a bag of suspected methamphetamine from Defendant's jacket pocket and a second bag containing several smaller re-sealable baggies. (Id. at 95-96). Following the search of Defendant's person, the vehicle was searched.  (Id. at 97). From the vehicle, the officers seized a second quantity of suspected methamphetamine, which was located under the rubber "boot" that covers the gear shift, as well as approximately $300 in United States currency, some bullets and a holster.  (Id. at 97-99).

West Virginia State Police Chemist Carrie Kirkpatrick also testified as an expert witness in the field of drug analysis and identification.  (Id. at 126-127).  Ms. Kirkpatrick testified that

3

the substances seized from Defendant consisted of 7.9 grams of actual methamphetamine.[2]  (Id. at 128-129).

Defendant did not testify at his trial, but he did offer the testimony of two witnesses concerning the ownership of the Ford Bronco that Defendant was driving and the condition of the rubber "boot" that covered the gear shift area in which the second package of methamphetamine was found.  (Id. at 139-155).  The jury ultimately found Defendant guilty of possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  (# 102).

In the Presentence Investigation Report ("PSR"), the Probation Officer recommended that Defendant be held responsible for the equivalent of 246.69 kilograms of marijuana, which produced a base offense level of 26 under the United States Sentencing Guidelines. The PSR also recommended that Defendant receive a two-level enhancement for obstruction of justice, based upon his attempt to defeat a pre-trial supervision urinalysis by wearing a penile prosthetic device.

The United States filed an objection to the PSR on the basis that the report had not included a two-level enhancement for possession of a firearm in connection with a drug trafficking

---

[2]  This calculation consists of .17 grams of actual methamphetamine in the package taken from Defendant's person and 7.73 grams of actual methamphetamine in the package located in the vehicle Defendant was driving.

4

crime, pursuant to USSG §2D1.1(b)(1).  Defendant filed a number of objections regarding the evidence considered by the probation officer, the relevant conduct calculation, the failure to award Defendant a sentencing reduction pursuant to the "safety valve" provision of USSG §5C1.2, and the failure to consider a downward departure based upon Defendant's physical and emotional condition.

At Defendant's sentencing hearing on December 30, 2002, the presiding District Judge, the Honorable Charles H. Haden II, addressed the parties' objections.  The court turned its attention to the government's objection to the probation officer's failure to recommend an enhancement for Defendant's possession of a firearm, which would also determine Defendant's eligibility for the safety valve.

The government argued that Defendant's written statement stating that he had been staying in a motel room in Cross Lanes and his oral consent to search the room because "I told you there was a .22 Jennings pistol, black in color" were sufficient to support the enhancement.

Detective Savilla testified at the sentencing hearing.  He stated that Defendant told him that he had placed a .22 caliber Jennings pistol in a drawer inside the motel room in which he was staying and dealing methamphetamine.  (# 135 at 8).  Detective Savilla further testified that Defendant consented to a search of the motel room, but no firearm was located therein, and it appeared

that the room had been "cleaned out."  (Id. at 9).

Judge Haden found Defendant's oral statement to be reliable because it was "inculpatory" and "it was certainly to his detriment to give such a statement." (Id. at 12-13).  The court then found that the enhancement for possession of a firearm in relation to a drug trafficking crime was warranted, and he sustained the government's objection to the PSR. (Id. at 13).  The court further found that Defendant could not benefit from the safety valve provision because of the finding that he possessed a firearm. (Id.)

Based upon the findings in the PSR, Defendant's total offense level was calculated to be 30.  Using a total offense level of 30 and criminal history category of I, the district court determined that Defendant's Guideline sentencing range was 97-121 months. (Id. at 14).  Defendant was sentenced to 97 months in prison, followed by a five-year term of supervised release.  (Id. at 17).

Defendant pursued a direct appeal to the United States Court of Appeals for the Fourth Circuit.  Defendant's appeal contended that the district court erred in applying the two-level enhancement for possession of a firearm in connection with a drug trafficking crime.  Defendant further claimed that the district court did not comply with Rule 32(i)(3)(B) of the Federal Rules of Criminal Procedure, which requires the court to rule on disputed matters prior to imposing sentence.    The Fourth Circuit affirmed

Defendant's conviction and sentence on October 22, 2003.  <u>United States v. Washington</u>, No. 03-4037 (4th Cir., Oct. 22, 2003) (unpublished)(# 142).  A mandate was issued on November 13, 2003. (# 143).

Defendant filed his unexecuted Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on September 8, 2004 (# 147), and later filed an executed copy of the same motion on November 4, 2004 (# 156).[3]  As grounds for relief, Defendant contends that the district court violated his constitutional rights by enhancing his sentence when no gun was possessed and by failing to properly determine disputed facts at issue at the time of his sentencing, as required by Rule 32 of the Federal Rules of Criminal Procedure.  (<u>Id.</u> at 5, Grounds One and Two).  Defendant further asserts that he was provided ineffective assistance of counsel by his trial attorney, Carl J. Roncaglione, Jr.  (<u>Id.</u>, Ground Three).

On October 13, 2004, the United States filed a Response to Defendant's section 2255 motion, asserting that Defendant is entitled to no relief on his claims.  (# 154).  Defendant filed a Reply brief on November 12, 2004.  (# 158).  Defendant's Reply asserts, <u>inter</u> <u>alia</u>, that all of the enhancements of his sentence were unconstitutional under the Supreme Court's recent decision in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004).  The undersigned

---

[3] When citing to the motion, the undersigned will cite to document # 156, the executed version of the motion.

held this matter in abeyance pending further rulings by appellate courts on the application of <u>Blakely</u> and the Supreme Court's subsequent ruling in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005). The matter is now ripe for determination.

**<u>ANALYSIS</u>**

**A.   Claims Raised on Direct Appeal.**

In Ground One of his section 2255 motion, Defendant again asserts that the district court erred in applying the two-level enhancement for possession of a firearm in connection with a drug trafficking offense. Specifically, Defendant states:

> At sentencing, the Judge erroneously relied upon testimony, which was not given at trial, by a police officer that alleged the [Defendant] told the officer that there "was" a gun. The officer relied upon a written statement, allegedly made by [Defendant] but written in the officer's own handwriting, the [Defendant] stated: "I told you there <u>was</u> a .22 caliber Jennings pistol." However, no handgun was found in [Defendant's] room. In fact, the officer's own testimony confirmed that a subsequent search revealed, "Nothing in room, nothing taken." As a consequence, and over objection by defense counsel, the Sentencing Judge attributed the possession of a firearm to the Defendant in relation to a drug trafficking crime, which warrants a two-point enhancement under the Federal Sentencing Guidelines. Additionally, and as a result, because the Judge attributed the possession of a firearm to [Defendant], that prevented him from consideration of a reduction under the safety valve provision (18 U.S.C. § 2553(f)).

(# 156 at 5, Ground One).

In Ground Two of his motion, Defendant claims:

> In this case, a factual dispute remained for resolution at [Defendant's] hearing whether he possessed a firearm that warranted a two-level enhancement under the Sentencing Guidelines. At sentencing[,] the district

8

court did not expressly or clearly adopt the recommended findings contained in the presentence report whether or not the gun may be attributed to [Defendant], and, as a result, the district court did not properly make a factual determination adequate to satisfy the requirements of Rule 32 of the Federal Rules of Criminal Procedure.   The only statement by the district court during the sentencing hearing was the statement by the Court that [Defendant's] alleged confession had reliability and that it was inculpatory.

Clearly this does not rise to the level contemplated by the courts as to a factual determination of the disputed facts.

(Id., Ground Two).

The United States' Response contends that Defendant is barred from pursuing collateral relief on these claims because they were addressed and resolved in his direct appeal.  The Response states that "Defendant has had a full and fair opportunity to contest the district court's application of the firearm enhancement and the district court's responsibility to resolve issues of factual dispute at sentencing."  (# 154 at 7-8).

Defendant's Reply attempts to argue that the testimony of Detective Savilla upon which the district court relied in applying the enhancement left out a crucial detail: that there was someone else at the motel room who possessed the gun and that the person did not know about the Defendant's drug activity.  (# 158 at 2-3).

These precise issues were raised in Defendant's direct appeal and the Fourth Circuit found that there was no reversible error. Unless an intervening change in the law has justified revisiting a prior judicial determination, the right to pursue collateral relief

through a section 2255 motion is not an invitation to re-litigate issues already resolved.  See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)(collateral attack cannot ordinarily be made on basis of issues litigated on direct appeal).  There has been no intervening change in the law applicable to these issues. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant is not entitled to pursue collateral relief on these claims.

**B.  Ineffective Assistance of Counsel Claims.**

In Ground Three of his motion, Defendant claims that his attorney, Carl J. Roncaglione, Jr., provided ineffective assistance of counsel because he allegedly refused to allow Defendant to testify at trial.  Defendant further contends that Mr. Roncaglione failed to communicate directly with Defendant, to make an attempt to contact witnesses, or to otherwise investigate an available defense.  (# 156 at 5, Ground Three).  Defendant does not elaborate on these claims.[4]

An allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought

_____

[4]  Defendant's motion states that "[f]urther development will require the appointment of qualified counsel to review the record and amend the petition." (# 15 at 5C).  However, Defendant did not file a motion for appointment of counsel, and the undersigned proposes that the presiding District Judge **FIND** that, because Defendant's claims lack merit, there is no basis for appointment of counsel.

out.  See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1991).  Furthermore, the reasonableness of an investigation made by counsel must be evaluated under the totality of the circumstances facing the attorney.  See Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991).

Citing the standard set forth in Strickland v. Washington, 466 U.S. 688 (1984), in which a movant alleging a claim of ineffective assistance of counsel must demonstrate both deficient performance by his counsel and actual prejudice resulting therefrom, the United States asserts that Defendant's allegations fail to meet those requirements and that they "amount to an impermissible effort to second guess his attorney's trial strategy."  (# 154 at 8-9). Specifically, the United States' Response states:

> In this case, defendant was arrested in possession of an illegal controlled substance and subsequently made voluntary admissions of his guilt to the arresting police officers.  In the simplest terms, the evidence against defendant was, frankly, overwhelming at trial.  His wholly conclusory assertions, therefore, that Mr. Roncaglione failed to adequately investigate or prepare a defense, does not and cannot identify any specific circumstances that would have provided a factual basis for such a defense.  Certainly, a decision not to place defendant on the stand and expose him to potentially devastating cross examination[,] based upon his own prior statements, was a reasonable exercise of litigation strategy.

(Id. at 9).

In his Reply brief (# 158), Defendant repeats his bare allegations that Mr. Roncaglione "did not call any whitnesses [sic; witnesses] on the movant['s] behalf, or let movant testify on his

11

own behalf." (Id. at 6). He further alleges, for the first time, that Mr. Roncaglione failed to address all of the claims that he has raised in his motion to vacate, either at his sentencing or in his direct appeal. (Id.)

Defendant was arrested during a traffic stop resulting from his driving on a suspended license. In the Ford Bronco that Defendant was driving, the officers found a package containing 7.73 grams of methamphetamine under the rubber "boot" that covered the gear shift, in addition to a smaller amount of methamphetamine, a set of digital scales, and numerous smaller plastic baggies, all of which were found on Defendant's person. Mr. Roncaglione was faced with this evidence, as well as Defendant's oral and written confessions that he had been purchasing methamphetamine from a source and then reselling it in smaller quantities for a profit.

One of the issues developed by defense counsel during the trial was the fact that the Ford Bronco was owned by a man named Waugh, and that it had been sold to another individual, Joshua Sowards. Mr. Roncaglione called Mr. Sowards as a witness to testify about the sale of the vehicle and the condition it was in at the time of purchase.

Mr. Sowards testified that, although he had not yet completed the title transfer, on the date of Defendant's arrest, he was in possession of the Bronco and had loaned the vehicle to Defendant. Mr. Sowards further testified that the "boot" that covered the gear

12

shift had no rips or tears, and that it was secured to the floor by four screws. (# 108 at 140-145). He further testified that when he recovered the Bronco from the police, the "boot" was ripped up, and the screws had been removed and were sitting in the passenger side floorboard. (Id. at 146).

Mr. Roncaglione also called Defendant's sister, Martha Washington, as a defense witness. Ms. Washington testified that she had cleaned the Bronco on the day that Mr. Sowards purchased it, and that, at that time, the "boot" was "screwed in tightly all the way around." (Id. at 149). Ms. Washington further testified that, on the date that Defendant was arrested, she and Defendant had been at Keith Morris's house. Ms. Washington stated that Mr. Morris left and returned to the house several times that night and, at one point, she heard a car door shut and she looked out the window and saw Mr. Morris near the Bronco. She stated that Mr. Morris then came inside and set a couple of screwdrivers down on a bar by the door. (Id. at 150-153).

In his closing, Mr. Roncaglione emphasized that the government had not called the officer who allegedly saw the package of methamphetamine sticking out of the "boot," and that no fingerprint analysis had been done on the packaging to determine if Defendant's fingerprints were on it. Mr. Roncaglione argued that the government could not prove beyond a reasonable doubt that the package of methamphetamine found in the vehicle was possessed by

13

Defendant, with the intent to distribute it, and without that proof, the government could not prove the required "five grams or more of methamphetamine" as required by the indictment. (<u>Id.</u> at 179-185).

Defendant has not specified what favorable evidence any additional investigation would have uncovered, or what additional favorable testimony he believes his counsel failed to offer. The undersigned proposes that the presiding District Judge **FIND** that, under the circumstances, Mr. Roncaglione's investigation and presentation of a defense, which did not include Defendant's testimony, was reasonable, and that Defendant has not demonstrated that his counsel's performance was constitutionally ineffective.

Furthermore, the record reflects that Mr. Roncaglione did object to the gun enhancement at the sentencing and addressed issues concerning that enhancement in Defendant's direct appeal, which was unsuccessful. It is well settled that claims of ineffective assistance of counsel are expected to be raised on collateral review, and not in a direct appeal. Moreover, Mr. Roncaglione could not be expected to claim that his own performance was ineffective. Thus, Defendant's claim that Mr. Roncaglione was ineffective by failing to raise all of the issues raised in his section 2255 motion, either during sentencing or on appeal, lacks merit.

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on his ineffective assistance of counsel claims.

### C. **Blakely/Booker Claims.**

Defendant's Reply also challenges, for the first time in these proceedings, all of the enhancements to Defendant's sentence under the Supreme Court's recent decision in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), and the subsequent decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), which applied the holding in <u>Blakely</u> to the United States Sentencing Guidelines.  (# 158 at 4). Defendant asserts that he neither was found guilty by a jury, nor pled guilty to or admitted to possessing a firearm or obstructing justice.  Thus, he asserts that the enhancement of his sentence for these reasons was improper.  (<u>Id.</u> at 5).

In <u>Blakely v. Washington</u>, 124 S. Ct. 253 (2004), the Supreme Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   The <u>Blakely</u> Court noted that the term "statutory maximum" as used for purposes of <u>Apprendi</u> means "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

The <u>Blakely</u> decision was based upon the Court's interpretation of Washington statutory law.  However, because it was believed that

15

the decision could have some impact on the Federal Sentencing Guidelines, the undersigned held Defendant's pending motion in abeyance until the Supreme Court made additional rulings.

On January 12, 2005, the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (2005), which reaffirmed the Court's holding in Apprendi, applied the holding in Blakely to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  125 S. Ct. at 756.  The Booker holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)).  Defendant's case has concluded direct review and is final.  Thus Booker does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.

Seven Circuit Courts of Appeals have ruled that Booker does not apply retroactively to cases on collateral review.  In McReynolds v. United States, 397 F.3d 479, 480-81 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005), the Court held:

> Although the Supreme Court did not address the retroactivity question in *Booker*, its decision in *Schriro v. Summerlin*, ____ U.S. _____, 124 S. Ct. 2519, 159 L. Ed.2d 442 (2004), is all but conclusive on the point.

16

*Summerlin* held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002) -- which, like *Booker*, applied *Apprendi*'s principles to a particular subject -- is not retroactive on collateral review.

*Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule -- which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." ___ U.S. ___, 124 S. Ct. at 2523.  It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment.   Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Ibid.*  That is no less true of *Booker* -- or for that matter *Apprendi* itself.  We held in *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral review, because it "is concerned with the identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful."  That, too, is equally true of *Booker*.  No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced.

The remedial portion of *Booker* drives the point home.  The Court held that the federal Sentencing Guidelines remain in force as written, although 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs.  District judges must continue to follow their approach *as guidelines*, with appellate review to determine whether that task has been carried out reasonably.  No primary conduct has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently, *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for purposes of retroactivity analysis.

* * *  The Court held in *DeStefano v. Woods*, 392 U.S. 631, and reiterated in *Summerlin*, that the choice between judges and juries as factfinders does not make such a fundamental difference; to the contrary, the Court stated in *Summerlin*, it is not clear which is more

17

accurate. ___ U.S. at ___, 124 S. Ct. at 2525. What is
more, *Booker* does not in the end move any decision from
judge to jury, or change the burden of persuasion. The
remedial portion of *Booker* held that decisions about
sentencing facts will continue to be made by judges, on
the preponderance of the evidence, an approach that
comports with the sixth amendment so long as the
guideline system has some flexibility in application. As
a practical matter, then, petitioners' sentences would be
determined in the same way if they were sentenced today;
the only change would be the degree of flexibility judges
would enjoy in applying the guideline system. That is
not a "watershed" change that fundamentally improves the
accuracy of the criminal process. *See also Curtis*, 294
F.3d at 843-44.

We conclude, then, that *Booker* does not apply
retroactively to criminal cases that became final before
its release on January 12, 2005. That date, rather than
June 24, 2004, on which *Blakely v. Washington*, ___ U.S.
__, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004, came down,
is the appropriate dividing line.

In <u>Green v. United States</u>, 397 F.3d 101, 103 (2d Cir. 2005),

the Second Circuit held that "neither <u>Booker</u> nor <u>Blakely</u> appl[ies]

retroactively to [a] collateral challenge." In <u>Varela v. United</u>

<u>States</u>, 400 F.3d 864, 868 (11th Cir. 2005), the Eleventh Circuit

held "that <u>Booker</u>'s constitutional rule falls squarely under the

category of new rules of criminal procedure that do not apply

retroactively to a § 2255 on collateral review." In <u>Humphress v.</u>

<u>United States</u>, 398 F.3d 855, 863 (6th Cir. 2005), <u>pet. for cert.</u>

<u>filed, No. 05-5130</u>, the Sixth Circuit ruled that:

We see no basis for concluding that the judicial
factfinding addressed in *Booker* is either less accurate
or creates a greater risk of punishing conduct the law
does not reach than did the judicial factfinding
addressed in *Ring*. The Supreme Court has never held that
a new rule of criminal procedure falls within *Teague*'s
second exception. *Beard [v. Banks]*, 124 S. Ct. [2504],

18

2513-14 [(2004)]. We hold that *Booker*'s rule does not either.

In <u>United States v. Price</u>, 400 F.3d 844, 848 (10th Cir. 2005), <u>pet. for cert. filed, No. 04-10694</u>, the Tenth Circuit held that <u>Blakely</u> was a new rule of criminal procedure that was not subject to retroactive application on collateral review. In <u>Lloyd v. United States</u>, 407 F.3d 608, 615-16 (3d Cir. 2005), the Third Circuit held that "<u>Booker</u> announced a rule that is 'new' and 'procedural,' but not 'watershed;'" thus it does not apply retroactively to § 2255 motions filed in cases which were final as of January 12, 2005. In <u>Schardt v. Payne</u>, 414 F.3d 1025 (9th Cir. 2005), the Ninth Circuit held that <u>Blakely</u> did not announce a watershed rule of criminal procedure, and quoted approvingly from <u>Price</u>.

Based on <u>McReynolds</u>, <u>Green</u>, <u>Varela</u>, <u>Humphress</u>, <u>Price</u>, <u>Rucker</u>, <u>Lloyd</u>, and <u>Schardt</u>, the undersigned proposes that the presiding District Judge **FIND** that Defendant's conviction was final before <u>Blakely</u> and <u>Booker</u> were decided, and that neither <u>Blakely</u> nor <u>Booker</u> applies retroactively on collateral review. Thus, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on his <u>Blakely/Booker</u>-based claim.

Furthermore, to the extent that Defendant has asserted that his counsel was ineffective in failing to argue that the

19

enhancements to his sentence were improper because the facts supporting them had not been found beyond a reasonable doubt by a jury or admitted by Defendant, such a claim also lacks merit.  Mr. Roncaglione was not expected to be clairvoyant concerning the Supreme Court's rulings over a year and a half later.

### D.    Failure to Make Rule 35 Motion.

In passing, in his Reply brief, Defendant contends that Assistant United States Attorney John Frail stated that "he was going to bring [Defendant] back to court to make a motion pursuant to 5K1 and pursuant to Rule 35, of the rules of criminal procedure, but he did not do that," and that "it is clear that [Defendant] earn[e]d a reduction in sentence due to the fact that [Defendant] was very cooperative and helpful to the government."  (# 158 at 5).  However, the United States has made no such motion.

Rule 35(b) of the Federal Rules of Criminal Procedure provides as follows:

> **(1) In General.**  Upon the government's motion made within one year of sentencing, the court may reduce a sentence if:
>
> > (A) the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; and
> >
> > (B) reducing the sentence accords with the Sentencing Commission's guidelines and policy statements.
>
> **(2) Later Motion.**  Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance

involved:

> (A) information not known to the defendant
> until one year or more after sentencing;
>
> (B) information provided by the defendant to
> the government within one year of sentencing,
> but which did not become useful to the
> government until more than one year after
> sentencing; or
>
> (C) information the usefulness of which could
> not reasonably have been anticipated by the
> defendant until more than one year after
> sentencing and which was promptly provided to
> the government after its usefulness was
> reasonably apparent to the defendant.

> **(3) Evaluating Substantial Assistance.**  In evaluating
> whether the defendant has provided substantial
> assistance, the court may consider the defendant's
> presentence assistance.

Fed. R. Crim. P. 35(b).

Rule 35 grants the United States "the power, not the duty" to
file motions for sentence reduction.  See United States v. Leonard,
50 F.3d 1152, 1157 (2d Cir. 1995).  The Fourth Circuit has held
that, in the absence of a motion from the government, a court may
grant a sentence reduction

> only if (i) the government has obligated itself in a plea
> agreement to move for a departure, or (ii) the
> government's refusal to move for a departure was based on
> an unconstitutional motive.  See United States v.
> Wallace, 22 F.3d 84, 87 (4th Cir. 1994)(citing Wade v.
> United States, 504 U.S. 181, 185-86, 112 S. Ct. 1840, 118
> L. Ed.2d 524 (1992)).  If neither of these factors is
> present, a court may not grant a reduction even if the
> defendant has, in fact, provided substantial assistance.
> See id.; Wade, 504 U.S. at 186, 112 S. Ct. 1840.

United States v. Saunders, 226 F. Supp.2d 796, 799 (E.D. Va. 2002).

21

In the instant case, Defendant did not plead guilty. Thus, there was no plea agreement that obligated the government to move for a sentence reduction based upon substantial assistance. Furthermore, at the conclusion of Defendant's sentencing hearing, Mr. Frail stated as follows:

> With regard to Mr. Washington's cooperation, since the time of his jury trial, he has indicated a desire to cooperate with the United States. He has provided cooperation in the form of debriefings and grand jury testimony. While I am not prepared to make a motion pursuant to 5K1 today on his behalf, based on the cooperation he has given to date, we anticipate coming back to the Court within the one year pursuant to Rule 35 of the Rules of Criminal Procedure, and I did want the court to know that.

(# 135 at 17).

It is clear from the record that Mr. Frail did not promise to file a Rule 35 motion, and Defendant has not demonstrated that the United States has acted with any unconstitutional motive in failing to make a Rule 35 motion. Thus, to the extent that Defendant has attempted to raise a claim for collateral relief on this basis, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief thereon.

For all of the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion (## 147 and 156).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the

Honorable John T. Copenhaver, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Benny Ray Washington, to counsel of record, and to Judge Copenhaver.

September 16, 2005
Date

Mary E. Stanley
United States Magistrate Judge

23